1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                          **WESTERN DIVISION**

11

12  NOELLE REYNA,                        )   No. CV 17-5428-PLA
                                         )
13              Plaintiff,               )   **MEMORANDUM OPINION AND ORDER**
                                         )
14        v.                             )
                                         )
15  NANCY BERRYHILL, DEPUTY              )
    COMMISSIONER OF OPERATIONS           )
16  FOR THE SOCIAL SECURITY              )
    ADMINISTRATION,                      )
17                                       )
                Defendant.               )
18  _____ )

19                                  **I.**

20                            **PROCEEDINGS**

21         Plaintiff filed this action on July 23, 2017, seeking review of the Commissioner's[1] denial of

22  her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

23  payments.  The parties filed Consents to proceed before a Magistrate Judge on October 5, 2017,

24  _____

25         [1]    On March 6, 2018, the Government Accountability Office stated that as of November 17,
    2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act
26  (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official.  As of
    that date, therefore, she was not authorized to continue serving using the title of Acting
27  Commissioner.  As of November 17, 2017, Berryhill has been leading the agency from her position
    of record, Deputy Commissioner of Operations.
28

and February 26, 2018.   Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on August 14, 2018, that addresses their positions concerning the disputed issues in the case.   The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on August 26, 1966. [Administrative Record ("AR") at 20, 188, 190.] She has past relevant work experience as a stock clerk, a florist, a retail assistant manager, a bead worker, and a picture framer.  [AR at 28, 66-67.]

On November 7, 2012, plaintiff filed an application for a period of disability and DIB, and on November 28, 2012, she filed an application for SSI payments, alleging in both that she has been unable to work since November 16, 2011. [AR at 20; see also AR at 188-89, 190-91.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 152-53.]  A hearing was held on February 24, 2016, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 36-73.] A vocational expert ("VE") also testified. [AR at 64-72.] On March 30, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability from November 16, 2011, the alleged onset date, through March 30, 2016, the date of the decision. [AR at 20-30.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 186-87.]  When the Appeals Council denied plaintiff's request for review on May 25, 2017 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Id. (internal quotation marks and citation omitted).  However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)).  The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed.  626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.      THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

## B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

November 16, 2011, the alleged onset date.[2] [AR at 22.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease, cervical and lumbar spine; adjustment disorder; and anxiety disorder. [Id.] He found plaintiff's right lateral epicondylitis was non-severe, and that her alleged hearing loss and vertigo were not medically determinable impairments. [AR at 24-25.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 25.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[4] "except: low stress, only occasional decision making required and only occasional changes in the work setting; occasional interaction with the public." [AR at 26.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as a stock clerk, a florist, a retail assistant manager, a bead worker, and a picture framer. [AR at 28, 67-69.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an "assembler, small products" (Dictionary of Occupational Titles ("DOT") No. 706.684-022), and as a "photocopy machine operator" (DOT No. 207.685-014). [AR at 29, 69.] Accordingly, the ALJ determined that plaintiff was not disabled

[2]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. [AR at 22.]

[3]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

at any time from the alleged onset date of November 16, 2011, through March 30, 2016, the date of the decision.  [AR at 30.]

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he:  (1) assessed plaintiff's subjective symptom testimony; (2) assessed the medical evidence; and (3) failed to consider plaintiff's obesity in his analysis.  [JS at 3.]  As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## A.    SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff contends that the ALJ's "adverse credibility assessment is not supported by clear and convincing reasons."  [JS at 4.]

The ALJ summarized plaintiff's testimony as follows:

[Plaintiff] testified that she stopped working in October 2011 at Ralph's supermarket. She stated that she had physical problems including fibroids that made it hard for her to bend, high blood pressure, hearing problems due to a loud speaker, and cervical and lumbar spine issues that started after working on a flat, slippery surface.  She said she was able to continue lifting, but would have low back pain after standing too long.  She said that she has learned to "ease up."  She said she also has pains when she reaches out and grabs something.  She said she has sharp pain in her lower back about once a month.  She said lifting her nieces too much, who weigh 25 pounds and 50 pounds [sic].  She testified that she helps babysit her nieces.  She said that the girls don't let her sit ever.  She said she is still working. She said she can sit for a half [sic] before she needs to adjust herself and then is done sitting after an hour.  She said it feels like she has a pinched nerve in her arms.  She said the chiropractic treatment helps and if she gets the treatment regularly, she is okay.

[Plaintiff] testified that she was told on her last day of work she was abnormally slow, and she was then told that she had posttraumatic stress disorder.  She said it causes her to fall to the floor.  She said her doctors haven't said much about it.  She said she takes Lexapro, which she said has helped.  She said Adderall really helped her focus.  She said she stopped it on accident.  She said she has trouble focusing and if she is around people[] she doesn't know[,] she gets dry mouth and sweats. She said she gets anxious around people and nervous.  She said in the last two weeks, she's had vertigo.  She said she also has intense emotions and will cry in front of people.  She said it happens now once a month.

[AR at 26-27.]

The ALJ found that plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence for the reasons explained in this decision." [AR at 27.] With respect to plaintiff's statements of back and neck pain, the ALJ stated that plaintiff "does not frequently use narcotic pain medications and has had little therapy or treatment from physicians or orthopedic specialists for her back, which lessens the consistency of her statements that she suffers from severe, intractable pain." [Id.] He also noted that plaintiff's activities of daily living, which include "no trouble getting dressed, putting on socks or shoes, doing housework, driving, or sleeping through the night," and "extensively babysit[ting] her nieces," are not as limited as would be expected given her complaints of disabling symptoms and limitations. [AR at 27, 28.] The ALJ further found that because there was "little in the way of objective findings by her treating mental health providers," plaintiff's "testimony regarding her mental symptoms [was rendered] less than fully consistent." [AR at 27-28.]

On March 28, 2016, two days prior to the ALJ's decision in this case, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to

produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of her symptoms. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102.

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering [see generally AR at 22-28], the ALJ's reasons for rejecting a claimant's credibility[5] must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible

---

[5]    While SSR 16-3p eliminated the use of the term "credibility," case law using that term is still instructive in the Court's analysis.

grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, in discounting plaintiff's testimony, the ALJ found the following: (1) plaintiff had received little treatment or therapy for her back and neck conditions; (2) plaintiff's daily activities are not consistent with the alleged severity of her symptoms and limitations; and (3) plaintiff's statements regarding her mental health symptoms are not supported by the objective findings of her treating mental health providers. [AR at 26-28.]

### 1.    Limited Treatment

The ALJ found that plaintiff's "allegations concerning the intensity, persistence and limiting effects of her symptoms" were "not entirely consistent" with the medical evidence. [Id.] He noted that although she testified that she had "severe, intractable pain" in her back and neck, the fact that she did not "frequently use narcotic pain medications and has had *little therapy or treatment* . . . for her back . . . lessens the consistency of her statements." [AR at 27 (emphasis added).]

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed to discount subjective symptom testimony. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

Plaintiff contends that the record reflects that she saw two orthopedic physicians -- Dr. Bashner and Dr. Simic – whom the ALJ neither named nor referred to in his decision. [JS at 5 (citing AR at 1190, 1244-50).] She observes that there are also MRI reports that corroborate her "reports of pain," and that the MRI report dated December 30, 2013, "revealed 3-4 mm disc bulges at both her cervical and lumbar spinal regions." [Id. (citing AR at 1150).] She states that the 2014 examination report by the orthopedic consultative examiner reflects that she had decreased range of motion in her cervical and lumbar spines, and that she weighed 200 pounds. [Id. (citing AR at 1151, 1152).] Plaintiff deems this reason given by the ALJ for discounting her testimony to be "meritless" because plaintiff "underwent a hysterectomy and hernia surgery," and she "was prescribed and took Diovan, Metropolol, and Clonidine," which are used to treat hypertension, and ADHD. [JS at 12 (citations omitted).] She notes that she treats with a chiropractor to "treat her physical pain." [Id.]

Defendant responds that the two orthopedic reports referred to by plaintiff were prepared by "two different qualified medical examining physicians in Plaintiff's workers compensation case." [JS at 8 (citing AR at 1190-93, 1244-50).] Defendant further asserts that plaintiff "fails to cite to any evidence that she received anything other than the most basic treatment for her physical impairments." [Id.]

The Court agrees that the ALJ completely failed to mention and/or adequately consider plaintiff's treatment with Dr. Bashner, Dr. Simic, and chiropractor Michael D. Bateman, D.C., CCFC, QME, IDE. In fact, as discussed in more detail below, Dr. Bateman's 15-year history of treating plaintiff belies the ALJ's assertion that plaintiff "has had little therapy or treatment . . . for her back." [AR at 27.] Moreover, in light of the fact that Dr. Bateman's opinion provides support for plaintiff's testimony, as do the clinical findings of the consultative orthopedic examiner, this error was not harmless. This was not a clear and convincing reason to discount plaintiff's subjective symptom testimony.

### 2. Activities of Daily Living

The ALJ also pointed to plaintiff's description of her daily activities as not being consistent

with her complaints of disabling symptoms and limitations. [AR at 27, 28.] Plaintiff does not address this reason, and defendant contends that although plaintiff mentioned the ALJ's reliance on plaintiff's daily activities to find her testimony "less than fully credible," she "does not actually challenge the ALJ's reliance on this factor" and, therefore, "any such error would be harmless as Plaintiff has not presented any argument that the ALJ's reliance on daily activities was improper." [JS at 6 (citations omitted).] Defendant also argues that the ALJ properly found that "with respect to *both* the physical and mental impairments, Plaintiff's admitted levels of daily activity were inconsistent with her allegations that her symptoms were disabling." [JS at 9 (citing AR at 27-28) (emphasis added).]

The Court agrees that plaintiff presents no arguments with respect to this factor as it relates to her physical impairments. Even if she did provide argument, the Court agrees with the ALJ's assessment that plaintiff's ability to "extensively babysit her nieces," seems to be inconsistent with her allegations of disabling physical pain. Indeed, plaintiff testified that although she can babysit her nieces, the only reason she could not babysit for other children is that she is "so insecure," and is "not well enough for them to want to hire me to take care of their children." [AR at 62.] She explained that her nieces, who are 6 and "almost 2," and weigh 50 pounds and 25 pounds respectively, do not ever let her sit, and that sometimes she has to lift them both at the same time. [AR at 46-49.] She also said that "one of [her] nieces sometimes" is too heavy too lift. [AR at 47.]

However, the *only* mention by the ALJ of plaintiff's activities of daily living in connection with plaintiff's mental impairments was a passing mention that "caring for small children can be quite demanding, both mentally and physically." [AR at 28.] To the extent that this "dicta" was intended to be a reason given by the ALJ for discounting plaintiff's testimony regarding her mental health symptoms and limitations, the Court does not find it to be a clear and convincing reason supported by substantial evidence.

As the matter is otherwise subject to remand based on the ALJ's failure to provide clear and convincing reasons for discounting plaintiff's testimony regarding her mental health symptoms and limitations (as the above reason was the *only* reason given for discounting that testimony), and for reconsideration of the medical opinions of record relating to plaintiff's physical impairments,

the ALJ on remand must reconsider all of her testimony regarding her physical *and* mental limitations.

### 3. Objective Evidence

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the <u>only</u> basis to reject a claimant's subjective symptom testimony (<u>Trevizo</u>, 871 F.3d at 679 (quoting <u>Robbins</u>, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); <u>accord</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001). As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." <u>Treichler</u>, 775 F.3d at 1103 (citation omitted); <u>see</u> <u>Laborin v. Berryhill</u>, 867 F.3d 1151, 1153 (9th Cir. 2017) (ALJ's statement that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity assessment" is an insufficient basis for discrediting testimony).

Here, the ALJ stated that plaintiff's mental health records "largely contain [plaintiff's] reports of her symptoms, but there is little in the way of objective findings by her treating mental health providers." [JS at 27 (citation omitted).] He noted that mental status examinations reflected that plaintiff's "thinking was logical and there were no signs of cognitive difficulty," her ability to pay attention was intact, she generally reported to her psychiatrist that she was "doing okay," she discussed her complaints "about issues with her family to the psychologist . . . suggest[ing] that [plaintiff] was experiencing situation stressors, but evidence does not support a frank psychiatric basis for [her] reported subjective symptoms." [<u>Id.</u> (citation omitted).]

Plaintiff notes that the ALJ's finding that there was little in the way of objective findings from her mental health treating providers "is untrue." [JS at 4.] She states that Daljit S. Mac, M.D., "documented findings on examination relative to mood, signs of anxiety, signs of depression, as

well as limited insight and judgment"; David R. Kauss, Ph.D., a licensed psychologist, noted that plaintiff appeared depressed and anxious; termed her a "rambling historian"; found evidence of impaired concentration and memory, and stated that she had trouble with remote recall and difficulty with serial sevens; and, in a supplemental report after a "significant period of time of psychiatric treatment," Dr. Kauss opined that plaintiff "had a persistence of psychiatric symptoms, with no significant improvement." [JS at 4-5 (citing AR at 986, 987, 1033, 1256, 1261-1341).] Plaintiff further submits that the record reflects the following: an anxious mood "nearly every time on examination" [JS at 11 (citing AR at 895, 898, 904, 907, 913, 916, 919, 922, 925, 928, 931, 936, 938, 941, 944, 947, 950, 953, 1037 (as reported by the consultative examiner))]; a disheveled appearance [id. (citing AR at 894, 915, 918, 930, 937, 946)]; agitated motor activity [id. (citing AR at 894, 903, 909, 924, 930, 949)]; that she described feeling agitated and becoming upset easily and reported crying spells [JS at 11-12 (citing AR at 904, 938, 941, 944, 947, 1141)]; that even on Lexapro she was not doing well [JS at 11 (citing AR at 919)]; and that she required a lot of support. [Id. (citing AR at 919).]

Defendant repeats the ALJ's finding that the record included "few objective, positive mental status examination findings from Plaintiff's treating psychiatrist. On numerous occasions, Plaintiff's thinking was logical, and there were no signs of cognitive difficulties." [JS at 9-10 (citing AR at 27, 1120, 1216, 1218, 1226, 1232, 1234, 1238, 1240).]

The Court concludes that the ALJ's finding that the objective evidence record did not support plaintiff's mental health limitations was not a clear and convincing reason supported by substantial evidence to discount her testimony about her mental health limitations. In any event, it was the *only* reason given for discounting her subjective symptom testimony on this issue, which itself is error. Remand is warranted on this issue.

**B. ASSESSMENT OF OBJECTIVE MEDICAL EVIDENCE**

On December 30, 2013, Dr. Bateman issued a report regarding his treatment -- since 1997 -- of plaintiff. [AR at 1141-47.] In that report, he described the results of his February 26, 2013, physical examination of plaintiff, and compared his grip strength findings to a similar examination

he had conducted in September 2005. [See AR at 1142.] In his February 26, 2013, examination, Dr. Bateman generally found pain and tenderness to palpation in plaintiff's cervical and thoracic spines; limited range of motion in the cervical spine; slight to moderate pain in the right elbow and right wrist; "limited [range of motion of the elbow and wrist joints] at or near the end ranges of flexion, extension abduction, abduction, supination and pronation"; and, based on cervical testing, plaintiff was positive bilaterally for cervical compression, cervical distraction, and shoulder depression. [Id.] With respect to plaintiff's thoracolumbar-sacral examination, he found palpable pain and tenderness in the spinous processes at several levels; spasms; reduced range of motion; positive Laseque's, Kemp's, Milgram's, and Valsalva tests; and positive bilateral leg raising test results at 80 degrees and pain with passive leg raising. [AR at 1143-44.] Dr. Bateman reviewed an August 30, 2013, MRI scan of plaintiff's cervical spine and noted moderate spondylosis from C4-C7, moderate central canal stenosis at C4-C5 and C5-C6, and severe right foraminal narrowing at C5-C6 and moderate bilateral foraminal narrowing at C6-C7. [AR at 1144.] He further noted that an August 30, 2013, MRI of plaintiff's lumbar spine revealed marked degenerative changes of the facets at L4-L5 associated with anterior degeneration spondylolisthesis and moderate lateral recess stenosis, with mild bilateral foraminal narrowing; and bilateral bulging without stenosis at L2-L3 and L3-L4. [Id.] Additionally, he stated that September 5, 1997, x-rays revealed "[r]eversal of the cervical lordosis with moderate loss of the disc space at C5-6. Moderate consummate arthropathy at C4-5 and C5-6." [AR at 1145.] He diagnosed plaintiff with disc herniation at L4-L5 with spondylosis and moderate lateral recess stenosis; lumbar spine degeneration; multiple disc herniations in the cervical spine with associated degeneration and stenosis; sciatica; cervical radiculopathy; chronic wrist and hand pain; knee pain; and leg pain. [Id.] Dr. Bateman opined that plaintiff's prognosis for improvement is "poor" because the cervical and lumbar disc herniation "superimposed on [her] underlying degenerative changes," as evidenced from the 1997 x-ray that "already had degenerative changes." [AR at 1146.] He stated that the 2013 MRI reflected that her condition "has markedly worsened." [Id.] He stated that plaintiff is unable to sit for prolonged periods greater than 60 minutes; unable to stand greater than 60 minutes without discomfort and increased radiculopathy in her lower

extremity; and the degenerative changes in her cervical spine causing radiculopathy in the upper extremity with muscle weakness and pain has been "clinically correlated with positive orthopedic testing, neurological and strength testing." [AR at 1146-47.] He also stated the following:

> [Plaintiff] has emotional and psychological issues that need to be addressed. They are beyond the scope of my expertise. [She] has indicated that she has been diagnosed with posttraumatic stress disorder. I have seen the emotional toll and the effect of these stresses on Ms. Reyna over the 15 plus years that I have treated her in my office. I have seen the emotional changes that have occurred. These would in my opinion also cause in the patient to have limited employability. Thus, it is my opinion, with a reasonable degree of medical and chiropractic certainty, Noelle Reyna is not a candidate for any form of gainful employment.

[AR at 1146-47.]

Without discussing what Dr. Bateman's conclusions were, the ALJ gave "little weight" to them. [AR at 28.] The ALJ noted that a chiropractor is not considered an acceptable medical source, and stated that "the extreme limitations [found by Dr. Bateman] are inconsistent with the [April 29, 2014] findings and conclusions of the orthopedic consultative examiner, an acceptable medical source. Additionally, there are no treatment notes from the chiropractor in the file supporting his conclusions." [AR at 28.]

Plaintiff states that Dr. Bateman treated her physical pain. [JS at 12 (citing AR at 1106).] She notes that he issued his opinion in his capacity as a Qualified Medical Evaluator, and provided a detailed analysis regarding her limitations. [JS at 15 (citing AR at 1141-47).] She argues that the ALJ erred when he gave "little weight" to Dr. Bateman's opinion and that he failed to articulate the legal standard for evaluating "other source" opinions like those of Dr. Bateman. [Id.]

Defendant responds that the ALJ provided appropriate reasons for discounting the "other source" opinion of Dr. Bateman. [JS at 19.]

The fact "that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals.'" SSR 06-03p, 2006 WL 2329939, at *5. "Medical sources who are not 'acceptable medical sources,' [include] nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists", and "only 'acceptable

medical sources' can [provide] medical opinions [and] only 'acceptable medical sources' can be considered treating sources, whose medical opinions may be entitled to controlling weight." See SSR 06-03p, 2006 WL 2329939, at *2 (citations omitted); see also Popa v. Berryhill, 872 F.3d 901, 907 (9th Cir. 2017). Nevertheless, even under the Administration's earlier regulations, evidence from "other medical" sources, including chiropractors, can demonstrate the "severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2. Indeed, the Social Security Administration has recognized that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03p, 2006 WL 2329939, at *3. Therefore, according to the Administration, opinions from other medical sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects." Id.

Relevant factors when determining the weight to be given to an "other" medical source include: how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairments; and any other factors that tend to support or refute the opinion. SSR 06-03p, 2006 WL 2329939, at *4-5. Thus, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' *may outweigh* the opinion of an 'acceptable medical source . . . .'" SSR 06-03p, 2006 WL 2329939, at *5 (emphasis added). "For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." Id.

Based on the above, to the extent the ALJ discounted Dr. Bateman's opinion because he

is not an acceptable medical source, this was not a sufficient reason to discount his opinion. Moreover, the ALJ did not discuss the nature and extent of plaintiff's treating relationship with Dr. Bateman; the fact that his opinion was based on relevant evidence, including examination and testing in both 2005 and in 2013, on MRIs and x-ray reports, and on Dr. Bateman's frequent treatment and observation of plaintiff; how well Dr. Bateman articulated his opinion; or Dr. Bateman's expertise as a chiropractor treating plaintiff's spine and neck impairments (and even his observations of her mental health) for over 15 years. Indeed, other than the 2014 report of the orthopedic consultative examiner, and a brief mention that there are "findings of some back and neck pathology in the record" [AR at 27 (citing AR at 1128-32 (the August 30, 2013, reports of plaintiff's cervical and lumbar MRIs))], the ALJ did not discuss *any* other medical evidence of record relating to plaintiff's complaints of back and neck pain. Additionally, although the ALJ found that Dr. Bateman's report was not corroborated by any treatment notes, the breadth and depth of his discussion of plaintiff's longitudinal history and of his examinations in 2005 and in February 2013, demonstrate that his opinion was not made up out of whole cloth, and was *at least* along the lines of a consultative examination. The ALJ, however, completely failed to comment *at all* on any of Dr. Bateman's findings or limitations.

While an ALJ is not required to address all evidence presented to him, he must explain why significant and probative evidence has been rejected. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation omitted). "[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that . . . [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the record that bolster his findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)); see also Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (it is impermissible for

the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

In this case, the consultative orthopedic evaluator (to whom the ALJ gave "significant weight," albeit also without stating that examiner's clinical findings or opinions), reviewed the same 2013 MRIs reviewed by Dr. Bateman, found similar reduced range of motion in plaintiff's neck and back, and also noted a positive straight leg raising test "limited to 80 degrees with considerable hamstring spasms, bilaterally." [AR at 1150-54.] There is no evidence that he reviewed any other medical records, including Dr. Bateman's report. Based on his one-time examination of plaintiff, the consultative examiner determined that plaintiff suffered from "[c]ervical spine pain, with radiation of pain into the upper extremities due to herniated discs and discogenic disease," and "[l]ow back pain, with radiation of pain into the lower extremities due to herniated discs and discogenic disease." [AR at 1154.] Notwithstanding these significant clinical findings (or apparently, without considering plaintiff's assessed weight of "220 lbs. without shoes"), the consultative examiner, without explanation, found that plaintiff can "lift and carry 20 pounds occasionally and 10 pounds frequently"; "stand and walk 6 hours in an 8-hour workday with appropriate breaks, and sit 6 hours in an 8-hour workday with appropriate breaks"; pushing and pulling is unlimited, "other than to lift and/or carry"; and posturally, she "is able to bend stoop, crouch and climb occasionally." [Id.]

Dr. Bateman's examination, in contrast, was based on over 15 years of treatment of plaintiff and on a complete physical examination in February 2013. His opinions in that report were based

on the same.  Thus, Dr. Bateman's opinion could have been substantiated by his 15 years of treatment notes had they been provided, but which were not part of the record.  In fact, Dr. Bateman's treatment of plaintiff's physical back and neck pain for over 15 years itself belies the ALJ's finding that plaintiff "has had little therapy or treatment . . . for her back."  AR at 27.  The Court finds (without deciding) that this may be one of those instances when more weight should have been given to the opinion of the "other" medical source, because Dr. Bateman is a qualified and licensed practitioner who has seen plaintiff far more often than the one-time consultative examiner and provided better supporting evidence and a better explanation for his opinion than did the consultative examiner.

In any event, the ALJ's failure to give legally sufficient reasons for rejecting Dr. Bateman's opinion impacted on his assessment of whether plaintiff's medically determinable impairments could reasonably be expected to produce the physical symptoms testified to by plaintiff.  Moreover, to the extent the ALJ also did not mention other treating providers, he must consider on remand all of the medical evidence.

## C.    MEDICAL OPINIONS AND OBESITY

Plaintiff contends that the ALJ substituted his non-medical judgment for that of plaintiff's health care professionals when he "downgrad[ed] [her] mental health impairments" and "boil[ed] them into a sole impairment (anxiety)."  [JS at 12].   She argues that her depression and PTSD are severe impairments and it was error not to include them, or any limitations stemming from them.  [Id.] She points to the longitudinal records from Dr. Mac (her treating psychiatrist) and Ajay Malhotra, Ph.D. (her treating psychotherapist), who have diagnosed her with major depressive disorder, recurrent, moderate; ADHD; generalized anxiety disorder, PTSD, and panic disorder.  [JS at 13 (citing AR at 23, 1216).]  Plaintiff also contends that the ALJ erred by not finding that plaintiff's obesity was a severe impairment.  [JS at 21.]

Defendant counters plaintiff's arguments.

Because the matter is being remanded for reconsideration of plaintiff's subjective symptom testimony pursuant to SSR 16-3p with respect to her physical and mental impairments and

limitations, and for reconsideration of the medical opinion evidence generally, the ALJ on remand must also reconsider the evidence of record regarding plaintiff's mental health impairments and treatment, and consider the impact, if any, of her obesity on her RFC.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony regarding her physical and mental health impairments and limitations, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Second, the ALJ on remand shall reassess the medical record relating to plaintiff's physical and mental health impairments, including the opinion of Dr. Bateman, and other treating providers (some of whom have been mentioned herein). The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Finally, based on his reevaluation of the medical record and plaintiff's subjective symptom

testimony, and his consideration of plaintiff's alleged obesity and its effects, if any, on her limitations, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[6]  See Shaibi v. Berryhill, 870 F.3d 874, 882-83 (9th Cir. 2017).

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  November 5, 2018

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[6]    Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to perform her past relevant work as a stock clerk, a florist, a retail assistant manager, a bead worker, and a picture framer.  [AR at 28.]